# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ELLIS-HALL CONSULTANTS, LLC; a Utah<br>limited liability company; and ANTHONY HALL, an individual,<br><br>                          Plaintiffs,<br><br>vs.<br><br>GEORGE B. HOFMANN IV, an individual; PARSONS KINGHORN HARRIS NKA COHNE KINGHORN, P.C., a Utah professional corporation; MATTHEW M. BOLEY, an individual; KIMBERLEY L. HANSEN, an individual; GARY E. JUBBER, an individual; and DAVID R. HAGUE, an individual, FABIAN & CLENDENIN NKA FABIAN VANCOTT, P.C., a Utah professional corporation. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-913<br>(Consolidated into Case No.: 2:12-cv-771)<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |
| In Re:<br><br>RENEWABLE ENERGY DEVELOPMENT CORPORATION,<br>                          Debtor,<br><br>ELIZABETH R. LOVERIDGE, Chapter 7 Trustee,<br><br>                          Plaintiff,<br>v.<br><br>TONY HALL; ELLIS-HALL CONSULTANTS, LLC; SUMMIT WIND POWER, LLC, SSP, A Trust (Scott Rasmussen – Trustee), and DOES I-X,<br><br>                          Defendants. | Case No. 2:12-cv-771<br><br>District Judge Dee Benson |

| | |
|---|---|
| SUMMIT WIND POWER, LLC,<br><br>      Counterclaimants,<br><br>v.<br><br>GEORGE HOFMANN, Chapter 7 Trustee,<br><br>     Counterclaim Defendant. | |
| SUMMIT WIND POWER, LLC, and<br>KIMBERLY CERUTI, an individual,<br><br>     Third-Party Plaintiffs,<br><br>v.<br><br>PARSONS KINGHORN HARRIS, a<br>professional corporation; GEORGE B.<br>HOFMANN; MATTHEW BOLEY;<br>KIMBERLY L. HANSEN; VICTOR P.<br>COPELAND;<br>     Third-Party Defendants. | |

Before the Court are two motions filed by Defendants and Third-Party Defendants George B. Hofmann, IV, Matthew M. Boley, Kimberly L. Hansen, and Parsons Kinghorn Harris (collectively "Defendants"). First, Defendants have moved to dismiss all claims asserted against them by Plaintiffs and Third-Party Plaintiffs Ellis-Hall Consultants, LLC, Anthony Hall, Kimberly Ceruti, and Summit Wind Power, LLC (collectively "Plaintiffs"), pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure, due to Plaintiffs' substantial interference with the judicial process. (Dkt. No. 471.) Second, Defendants seek summary judgment on the ground that Plaintiffs

lack admissible evidence to support their claims.  (Dkt. No. 493.)  Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  DUCivR 7-1(f).

## BACKGROUND

This case began in an adversary proceeding in the United States Bankruptcy Court for the District of Utah, Case No. 12-02225 ("Bankruptcy Case") in 2012.  In response to claims being brought against Ellis-Hall Consultants, LLC ("EHC"), Summit Wind Power, LLC ("SWP"), and Anthony Hall, SWP and Kimberly Ceruti lodged a Counterclaim and Third-Party Complaint ("TPC") against Defendants alleging legal malpractice.  Through the course of motion practice related to the Bankruptcy Court's jurisdiction, the merits of this case remained unaffected for several years.  Ultimately, Plaintiffs EHC and Hall filed a Complaint alleging similar causes of action in Case No. 2:15-cv-913.  Plaintiffs' collective causes of action were consolidated into Case No. 2:12-cv-771 before this Court.

Since the consolidation of Plaintiffs' claims, this case has been plagued by a willful pattern of conduct on the part of Plaintiffs that has disrupted or delayed the litigation process.  At the outset, Plaintiffs engaged in dilatory and obstructionist behavior in failing to agree to a scheduling order despite the Court's instructions during an April 27, 2017 hearing to get the case moving.  Eventually, and after requests for continuance of the scheduling conference, the parties appeared before Magistrate Judge Furse on December 13, 2017 for a scheduling conference and the first scheduling order was issued on January 9, 2018 establishing, *inter alia*, a fact discovery deadline

of October 30, 2018.  (Dkt. No. 175.)

Through the next several months, Plaintiffs continued to engage in dilatory conduct and disregard for the rules and procedures of this Court.  Such conduct included the failure to respond to written discovery, failure to meaningfully participate in discovery, and repeated attempts to stay this case, which tactics caused unnecessary motion practice.  Plaintiff Ceruti was central to this all; she is the sole member of SWP as well as the executive director of EHC.  Consequently, Defendants filed a motion to dismiss Ceruti's claims for failure to prosecute on June 21, 2018. (Dkt. No. 197.)

The Court agreed that Ceruti's failure to comply with deadlines, refusal or inability to attend hearings and schedule depositions, failure to respond to discovery requests, and repeated attempts to stay or to delay the litigation had placed an increased burden on the judicial system, court staff, and generally interfered with the effective administration of justice.  However, the Court had not explicitly provided Ceruti with prior notice that dismissal of the action was a potential sanction.  As such, the Court narrowly denied Defendants' motion to dismiss but gave express notice that further dilatory tactics could result in dismissal of Plaintiffs' claims.

Despite the Court's admonition, Plaintiffs' willful pattern of disruptive conduct continued, and the disposition of this litigation was needlessly delayed.  Such conduct included: (i) the delay or disruption of the Rule 30(b)(6) depositions of EHC and SWP; (ii) disruptive behavior during Ceruti's individual deposition; (iii) delaying or disrupting the scheduling of depositions, (iv) repeated attempts to stall the litigation through motions to stay the case or amend the scheduling order; and (v) failure to meaningfully participate in the good faith resolution of discovery disputes

in order to avoid court intervention. As a result of this conduct, judicial intervention was sought in a disproportionate amount to other similar cases. Further, Defendants were forced to file numerous motions to compel as well as requesting a telephone conference with Magistrate Judge Pead during Ceruti's individual deposition. Plaintiffs also objected to Magistrate Judge Pead's rulings that were adverse to their position without any discretion. Notably, each of Magistrate Judge Pead's rulings were affirmed by this Court.

Troubled by the ongoing willful pattern of conduct that delayed and disrupted the litigation, the Court issued an Order to Show Cause why this case should not be dismissed on November 26, 2018. (Dkt. No. 361.) A hearing was held on January 17, 2019 before the undersigned and Magistrate Judge Pead. At the hearing, the Court again declined to dismiss Plaintiffs' claims but informed the Plaintiffs that such a sanction was possible unless Plaintiffs exhibited responsiveness, cooperation, meaningful meeting and conferring, trying to resolve issues, and using the Court as a last resort, rather than a first option as the case moved forward. Moreover, the Court made it abundantly clear that a new scheduling order would not be entered on the basis that a new attorney was entering an appearance in this case.

Shortly before the close of fact discovery Plaintiffs retained two new lawyers to represent them. Multiple disruptive actions occurred following the appearance of new counsel including the following:

a.      On May 13, 2019, Defendants attempted to finish SWP's Rule 30(b)(6) deposition (which had been ordered on Defendants' motion to compel). However, Defendants were once again confronted with uncooperative and evasive behavior from Ceruti as well as obstructive,

difficult, and uncooperative behavior from SWP's counsel. As a result, the deposition was adjourned, and Defendants were required to file a motion to compel, which the Court granted in part at the July 29, 2019 hearing. After the Court reviewed the deposition transcript and a video tape of the deposition, the Court was extremely troubled by the conduct of SWP's Rule 30(b)(6) designee and her counsel. (Dkts. 409 and 463.)

b. Plaintiffs unilaterally cancelled PKH's Rule 30(b)(6) deposition after a dispute arose regarding several of the sixty-two (62) topics listed in the notice. Plaintiffs' subsequent motion to compel was denied at a July 29, 2019 Status Conference. (Dkt. Nos. 408, 420, and 463.)

c. Plaintiffs filed a motion to strike Defendants' answers and enter default following Defendants' supplementation of some documents, many of which had already been produced, were duplicates, or were immaterial. (Dkt. Nos. 446 and 461.) The Court expressed concern that, in lieu of the motion for sanctions, Plaintiffs rejected Defendants' offer to produce for further deposition(s) witnesses who could answer questions about the supplemental documents. This rejection amounted to disobedience of the Court's January 17, 2019 admonitions. Plaintiffs' motion to strike was denied on September 10, 2019. (Dkt. No. 497.)

d. Plaintiffs failed to produce expert reports on or before the deadline of July 12, 2019. Rather, Plaintiffs sought to stay the case or extend expert discovery deadlines on the basis of Defendants' supplementation of discovery responses. (Dkt. No. 449). Notably, Plaintiffs did not produce expert disclosures for opinions unrelated to Defendants' supplementation of discovery responses, e.g. for damage opinions. Plaintiffs also moved for a protective order (Dkt. No. 456). The Court denied each of these motions at the July 29, 2019 Status Conference (Dkt. No. 463).

On August 2, 2019, Defendants filed a motion to strike Plaintiffs' expert disclosure, expert witnesses, and expert evidence due to Plaintiffs' failure to provide expert reports. On September 4, 2019, Magistrate Judge Pead granted Defendants' motion, striking Plaintiffs' expert disclosure, expert witnesses, and expert evidence due to Plaintiffs' failure to comply with the expert disclosure requirements of Rule 26(a)(2)(B) and the Second Amended Scheduling Order. (Dkt. No. 492.) Plaintiffs objected to Magistrate Judge Pead's ruling (Dkt. No. 501); however, this Court overruled the objection and affirmed Magistrate Judge Pead's ruling and order in its entirety on October 4, 2019. (Dkt. No. 502.)

## **DISCUSSION**

### I.      **Defendant's Motion to Dismiss (Dkt. 471)**

On August 7, 2019, Defendants moved to dismiss this case pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure. (Dkt. No. 471.) Defendants argue that notwithstanding multiple admonitions, Plaintiffs continued their willful, dilatory, disruptive, and obstructionist course of conduct resulting in substantial interference with the judicial process and prejudice to all Defendants. The Court agrees.

Federal Rule of Civil Procedure 41(b) allows involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Similarly, under Federal Rule of Civil Procedure 37, the Court may impose the sanction of dismissal for a plaintiff's "fail[ure] to obey an order to provide or permit discovery."

Regardless of whether dismissal is sought under Rule 37 or Rule 41, in determining whether to dismiss this action, the Court applies the factors from *Ehrenhaus v. Reynolds*, 965 F.2d

916 (10th Cir. 1992)--i.e., "(1) the degree of actual prejudice to the defendant"; (2) "the amount of interference with the judicial process"; (3) the litigant's culpability; (4) whether the noncomplying litigant was warned that dismissal was a likely sanction; and (5) "the efficacy of lesser sanctions." *Id*. at 921 (internal quotation marks omitted). Dismissal with prejudice is appropriate only when these factors overshadow the judicial system's strong preference to decide cases on the merits. *DeBardeleben v. Quinlan*, 937 F.2d 502, 504 (10th Cir. 1991). The *Ehrenhaus* factors are not "a rigid test; rather, they represent criteria for the district court to consider [before] imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.

> A.    Defendants Suffered Actual Prejudice

Prejudice may be inferred from delay, uncertainty, and rising attorney's fees. *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993); *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 860 (10th Cir. 2018) (concluding substantial prejudice when plaintiff "sparked months of litigation" and defendants "wasted eight months of litigation").

In *Jackson v. Utah*, No. 2:18-cv-734-DB, 2019 WL 3083066 at *1 (D. Utah July 15, 2019) (unpublished) this Court stated that "[p]rejudice may be inferred from delay, uncertainty, and rising attorney's fees." *Id*. at *2. Similarly in *Rusk v. Fidelity Brokerage Services LLC*, No. 2:15-cv-00853-RJS, 2019 WL 1922691 at *5 (D. Utah April 30, 2019) (unpublished), the district court granted a Rule 41(b) motion to dismiss and stated that "[m]ounting attorneys' fees and delays constitute an identifiable form of prejudice." *Id. See also Chaides v. Strong*, No. 2:17-cv-1033-JNP, 2019 WL 3860074 at *3 (D. Utah August 16, 2019) (unpublished) (granting Rule 41 motion to dismiss and ruling that "[p]rejudice may be inferred from delay, uncertainty, and rising

attorney's fees.") Plaintiffs' conduct resulted in actual prejudice to Defendants. For example:

- Plaintiffs' unilateral cancellation of PKH's Rule 30(b)(6) deposition required Defendants to respond to a motion to compel, file a protective order, and attend a hearing resulting in increased costs and delay.

- Ceruti and SWP's counsel engaged in obstructionist and disruptive behavior in Defendants' attempts to take the Rule 30(b)(6) deposition of SWP. Defendants were required to prepare to take the deposition two times followed by motions to compel, one hearing, and two court orders before the deposition was ultimately completed on the third attempt on August 26, 2019 (11 months after the first attempt on September 27, 2018). This resulted in increased defense costs and significant delay.

- Rather than attempt in good faith to work towards a reasonable and proportional solution regarding supplemental disclosures (including Defendants' offer to produce additional witnesses for deposition), Plaintiffs filed a motion to strike Defendants' Answer and enter default. This conduct was in direct contravention with the Court's direction at the January 17, 2019 hearing on the Court's Order to Show Cause that the parties engage in responsiveness, cooperation, meaningful meet and conferring, trying to resolve issues, and using the Court as a last resort, rather than a first option. Further it resulted in increased costs, delay, and uncertainty for Defendants.

- Despite multiple extensions to the scheduling order, Plaintiffs failed to produce expert reports by July 12, 2019. Rather, Plaintiffs filed a motion for stay or for extension of expert deadlines requiring a response from Defendants, attendance at a hearing, attention to futile

expert deposition matters, filing of a motion to strike experts, and dealing with untimely

submission of expert reports (each more than six weeks late and in contravention of the

Court's order). In addition, Plaintiffs' failure to produce expert reports resulted in

uncertainty with defense strategy.

- Throughout the course of this over seven-year litigation, Plaintiffs never provided damage

  calculations as required under Fed. R. Civ. P. 26(a)(1)(A)(iii). As such, Defendants have

  been unable to prepare adequate defenses to the same.

Accordingly, the Court finds that Defendants were actually prejudiced by Plaintiffs' conduct

and this factor weighs in favor of dismissal.

B.      Plaintiffs Interfered with the Judicial Process

In *Jackson v. Utah*, *supra* at *2, this Court stated:

> Petitioner's failure to put himself in a position to comply with court
> orders disrespects the Court and the judicial process. His neglect has
> caused the Court and staff to spend unnecessary time and effort. The
> Court's frequent review of the docket and preparation of orders to
> move this case along have increased the workload of the Court and
> hijacked its attention from other matters with parties who have met
> their obligations and deserve prompt resolution of their issues.

This Court made similar comments in its August 31, 2018 Order that "narrowly" denied

Defendants' motion to dismiss Ms. Ceruti's claims for failure to prosecute. (*See* Doc. 285 at 3)

(stating that significant delays were attributable to Ms. Ceruti, which "have placed an increased

burden on the judicial system, court staff and generally interfered with the effective administration

of justice.") In addition, Judge Pead informed the parties at the January 17, 2019 Order to Show

Cause hearing that between September 1, 2018 and November 21, 2018 "there are 82 entries on the docket. That is an astounding number in comparison to other cases."

Plaintiffs' actions as detailed above clearly interfered with the judicial process as they have required the Court and staff to address these matters in multiple but unnecessary motions and hearings.

In addition, the Court's schedule for this case was effectively destroyed because of Plaintiffs' failure to provide expert reports by July 12. Plaintiffs attempted to submit expert reports from some experts more than six weeks after the deadline and in contravention of the Court's denial of their motion to stay or for an extension – all without good cause. Plaintiffs' failures to comply with the Court's scheduling order would have delayed trial significantly.

In *Jones*, the Tenth Circuit concluded that the plaintiff had significantly interfered with the judicial process when he did not answer a show-cause order or join a telephone conference. *Jones*, 996 F.2d at 265. Though Jones later argued that the district court could have abated the suit and revisited the status in three to six months, the court noted that abeyance would have delayed the proceedings for the other parties and the court. *Id*. The court said, "In similar circumstances, we have held that a district court could find interference with the judicial process when the plaintiff 'repeatedly ignore[s] court orders and thereby hinder[s] the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party.' " *Id*. (citation omitted).

Meanwhile, in *Villecco*, the Tenth Circuit concluded that the plaintiff had "caused great interference with the judicial process by failing to provide the court with a current mailing address

-12-

or an address that he regularly checked; respond to discovery requests; appear at his deposition; list any fact witnesses or otherwise comply with the court's Initial Pretrial Order, or respond to the Defendants' Motion to Dismiss." *Villeco v. Vail Resorts, Inc.*, 707 F. App'x 531, 533 (10th Cir. 2017). "[F]ailure to respond to court orders cannot be ignored." *Davis*, 571 F.3d at 1062.

Based on the foregoing, the Court finds that Plaintiffs have interfered with the judicial process.

C.     Culpability of Litigant

The culpability factor in *Ehrenhaus* "turns on whether the conduct at issue was within the litigant's control and if it amounted to willful and intentional disobedience." *Rusk*, *id*. at *6. "A willful failure is any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *Villeco v. Vail Resorts, Inc.*, 707 Fed. Appx. 531 at *534 (10th Cir. 2017) (citing and quoting *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). Plaintiffs' Actions meet this definition. They intentionally chose to cancel PKH's 30(b)(6) deposition and to pursue a motion to compel; they consciously obstructed the taking of SWP's 30(b)(6) deposition; they deliberately jumped to the motion to strike the answer rather than take the opportunity for a more moderate approach such as accepting Defendants' offer to depose, again, witnesses who authored documents; they consciously chose not to provide expert reports by the July 12 deadline, and after the Court denied their motion to stay or for an extension, they violated that order by serving three proposed reports each more than six weeks late. As Magistrate Judge Pead commented to Plaintiffs' counsel, Plaintiffs took an enormous risk in pursuing such a course of conduct.

Plaintiffs' culpability supports a finding of dismissal.

### D.     Warning

There can be no dispute that the fourth *Ehrenhaus* factor – prior warning that dismissal is a potential sanction – is clearly present here. *See e.g.* Docket 285.

### E.     Efficacy of Lesser Sanctions

As shown above, Plaintiffs' actions are willful and deliberate. Plaintiffs' actions and their prior conduct that has disrupted the orderly prosecution of their case has not abated despite prior orders, warnings, multiple hearings and admonitions. The Court expressed its frustrations with Plaintiffs' conduct on numerous occasions and warned that dismissal was a possibility if Plaintiffs did not alter their obstructionist behavior; these admonitions fell on deaf ears.  Based on this history, the Court finds that lesser sanctions than dismissal would be ineffective.  On this basis, the case should be dismissed, with prejudice.

## II.     Defendants' Motion for Summary Judgment (Dkt. 493)

This Court granted Defendants' Motion to Strike Plaintiffs' Expert Disclosure, Expert Witnesses and Expert Evidence. (Doc. Nos. 492 and 502.) Thereafter, on September 6, 2019, Defendants filed their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 493.)  Defendants argue that as a result of Plaintiffs' inability to produce expert opinion evidence, they cannot meet their burden to prove the essential elements of each of their causes of action.  (*Id.*)  Notwithstanding their prior arguments that exclusion of their untimely expert disclosures would result in an effective dismissal of their claims because such expert testimony was necessary, Plaintiffs now argue that two of their causes of action – breach of

fiduciary duty and unjust enrichment – should survive because no expert testimony is required for those claims. They also assert that their claim for nominal damages is sufficient to avoid summary judgment. (*See* Doc. 503 at 7,13, 14.) As such, the Court will address those arguments with respect to the causes of action and claims which Plaintiffs have not conceded must be dismissed.

A. Breach of Fiduciary Duty

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265.

In order to establish a prima facie case for legal malpractice based upon breach of fiduciary duty, a plaintiff bears the burden to prove: (1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931 (internal quotation omitted). Despite Plaintiffs' contentions, the Court finds that they cannot establish the necessary elements of breach and damages without expert opinion testimony.

a. Expert testimony regarding breach

Plaintiffs allege that Defendants breached the fiduciary duty of loyalty by suing Plaintiffs

on behalf of a different client. (*See* Dkt. No. 506 at 12.) Recognizing that expert testimony is necessary in many legal malpractice cases, Plaintiffs argue that expert testimony is not necessary for a lay juror to understand that their attorney should not have sued them. (*Id.*) However, this is contrary to Plaintiffs' previous argument that striking their experts (which the Court has now ordered) is "a de facto dismissal of the case", a "dismissal-level sanction[]", and exclusion of their experts "would functionally dismiss the case." (Doc. 481 at 4 and 7.) Plaintiffs further confirmed that they cannot establish a breach of fiduciary duty claim without expert testimony by their belated attempt to submit expert reports encompassing that very claim.

Plaintiffs' argument that no expert is required because their claim is simplistic is analogous to the argument that was rejected in *Keller v. Albright*, 1 F. Supp.2d 1279 (D. Utah 1997), where attorney Albright moved for summary judgment on the ground that plaintiff Keller did not have an expert. Keller argued, like Plaintiffs in the instant case, that he did not need an expert because Albright's "alleged negligence in failing to prevent the seizure and loss of Keller's assets is so obvious that no reasonable lay juror could not comprehend Albright's beach of duty." 1 F. Supp.2d at 1281-1282. The Court disagreed and granted the motion for summary judgment, stating:

> Keller seems to assume that, because Albright had a copy of a writ of execution and Keller complained to him that more assets were being seized than required, Albright was obviously negligent in preventing the seizure. However, as Albright points out, for lay jurors to reach this conclusion without the assistance of expert testimony, they must understand the scope of the writ of attachment, the judgment, and other orders issued by the district court in the state action; interpret and understand law and procedure relative to attachment and execution; determine what alternatives to the actions taken by Albright on Keller's behalf would have been more appropriate; and, finally, determine whether Albright acted with the degree of skill and care ordinarily exercised by lawyers in Salt Lake County in 1991. The court is not persuaded these matters are "within the common knowledge"

of lay jurors, and Keller has not directed the court to any authority supporting his
view.

*Id*. at 1282. Similarly, Plaintiffs' claim of breach of fiduciary duty involves many issues

that are not within the common knowledge of lay jurors. For example, the relationship between a

bankruptcy trustee and the trustee's counsel and particularly here, a trustee's special counsel

appointed pursuant to bankruptcy court order is beyond the common knowledge of lay persons.

This then also requires an understanding of a bankruptcy trustee's duties and responsibilities under

the bankruptcy statutes, regulations, and procedural rules including the trustee's obligation to

gather and market the debtor's assets for the benefit of creditors, to preserve and protect bankruptcy

estate assets, to seek bankruptcy court approval for bidding and auction procedures, the receipt

and processing of bids, the conducting of auctions, the presentation of motions for approval of

asset purchase agreements and sales, the closing of sales, motions for extensions of time to

determine whether to  assume contracts. Further, the underlying REDCO bankruptcy involved

issues of how a trustee should appropriately handle interference with a court-approved sale of

assets and a motion for court approval of retention of special counsel. Bankruptcy procedures are

often not familiar to lawyers who do not practice in that specialty, let alone to lay jurors. Moreover,

"an average bystander would [not] be able to provide the same testimony" that is required from an

expert to explain these complicated legal matters. *See Kirkham v. McConkie*, 2018 UT App 100,

¶ 8 (stating the test for determining if an expert is required is "whether an average bystander would

be able to provide the same testimony.")

In addition, Plaintiffs' breach of fiduciary duty claim cannot survive summary judgment

because it is grounded on the faulty premise that PKH sued its own clients, the Plaintiffs, on behalf of a different client. *See e.g.*, Doc. 503 at 10 (alleging that the breach of fiduciary duty consisted of Hofmann and PKH suing Plaintiffs.) But the only case in which any of the Plaintiffs were sued was the Adversary Proceeding in the Bankruptcy Court. Fabian & Clendenin (not PKH or any of its lawyers), as special counsel appointed by order of the Bankruptcy Court to represent Mr. Hofmann as trustee, commenced the Adversary Proceeding against SWP, EHC and Mr. Hall. (Doc. 1 in the Adversary Proceeding.) Mr. Hofmann's only role in the Adversary Proceeding was as a party – the Plaintiff/Trustee – not as a lawyer. Neither he nor PKH represented a "different client" in a lawsuit against Plaintiffs. *See* Utah R. Prof. Conduct, Rule 1.7(a) (conflict exists when lawyer represents a client "directly adverse to another client").

Plaintiffs also incorrectly claim that Defendants "implicitly conceded" that they injured Ceruti by naming her company SWP as a defendant in the Adversary Proceeding by seeking leave to withdraw as Ceruti's counsel "after they commenced the adversary proceeding." (Doc. 503 at 8, n. 3.) Defendants sought leave to withdraw as Ceruti's counsel in her personal cases before the Adversary Proceeding was filed. And the withdrawal is not evidence of any conflict of interest. For example, if a lawyer was injured in a car accident by one of his law firm's clients, it is not a conflict for the lawyer to hire another law firm to sue the client but also for the law firm to withdraw from representing the client.

Accordingly, the Court rejects Plaintiffs' position and concludes that expert testimony is required to establish the essential element of breach. *See Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 60, 417 P.3d 95 (noting that expert

testimony is required "to explain standard of care and breach issues where the average person has little understanding of the duties owed by particular trades or professions."); *Preston & Chambers, PC v. Koller*, 943 P.2d 260, 263 (Utah Ct. App 1997 (noting that expert testimony is required to explain "duties owed by practicing attorneys to their clients, especially in cases involving complex allegations of malpractice.").

Plaintiffs' failure to have expert(s) to establish breach of fiduciary duty requires that summary judgment be granted.

      b.  Expert regarding damages

Plaintiffs' argument with respect to the essential element of damages is similarly unavailing. While conceding that damages for lost profits cannot survive without expert testimony, Plaintiffs argue that some of their damages require simple arithmetic to compute. (Doc. No. 503 at 13-14.) Specifically, Plaintiffs assert that Defendants conduct caused them to incur attorney fees in defending the adversary proceeding and $18,000 to settle the same. (*Id.*) However, Plaintiffs cannot establish a causal nexus without expert opinion. Prior to the resolution of the adversary proceeding, Defendant Hofmann resigned as trustee. The successor trustee continued with the adversary proceeding against Plaintiffs. As such, absent expert opinion regarding the duties of a bankruptcy trustee, Plaintiffs cannot establish that but-for Defendants conduct they would not have suffered the damages complained of. In *USA Power, LLC v. PacifiCorp*, *supra*, 2016 UT 20, the Utah Supreme Court affirmed dismissal of a breach of fiduciary duty claim against a lawyer because the plaintiff could not establish its claimed damages. Specifically, the plaintiff previously hired a water rights lawyer who assisted in the development of a power plant.

Subsequent to those legal services, the water lawyer rendered similar services to the plaintiff's competitor who then asserted that the attorney breached her fiduciary duties to the plaintiff by using confidential information acquired from the prior representation of the plaintiff. Plaintiff then argued that it was damaged because its competitor was the successful bidder for the power plant.

In affirming dismissal of the claim against the lawyer, the *USA Power* court observed that the plaintiff failed to establish causation between claimed damages and the attorney's alleged breach of fiduciary duty. *Id.* at ¶¶ 114-118. The court observed that if "the client's injury would have occurred regardless of the attorney's action, then there is no causation." *Id.* at ¶ 115. Because the plaintiff could not show that it would have been the successful bidder for the Power Plant absent the lawyer's subsequent representation of the plaintiff's competitor, the claim was dismissed. *Id.* at ¶ 118.

In the present case, Plaintiffs essentially assert Hofmann, as a trustee, took adverse positions against Plaintiffs in the Adversary Proceeding. However, Plaintiffs have no evidence that another Chapter 7 bankruptcy trustee would have done anything different in pursuing the Adversary Proceeding. Indeed, after Hofmann resigned as the bankruptcy trustee in early August, 2012, Elizabeth Loveridge was appointed the new trustee that same month and she retained new counsel, Reid Lambert, to represent her. Ms. Loveridge as trustee and Mr. Lambert as her counsel (against whom no claim has ever been or could be asserted) continued to prosecute the Adversary Proceeding for more than two years until they settled in November 2014.

Thus, the new trustee who had no affiliation with Hofmann or PKH did not drop the Adversary Proceeding but prosecuted it to a settlement that was approved by Order of the

bankruptcy court. (Doc. 206 (Order Granting Motion to Approve Settlement/Compromise) in the REDCO bankruptcy.) As such, there is no causal connection between Hofmann's alleged wrongful conduct as the trustee/plaintiff at the commencement of the Adversary Proceeding and the $18,000 settlement payment that was made more than two years after he resigned. *USA Power, LLC,* ¶¶ 116-118 (the Plaintiff in a legal malpractice action must show that "no other lawyer" would have duplicated what the allegedly conflicted defendant lawyer did.)

Further, there is no evidence that the fees PKH charged to Ceruti in her personal cases and to EHC in its cases were unreasonable or that the results obtained were deficient.

c.   Nominal Damages

Plaintiffs' argument that nominal damages may be awarded in a breach of fiduciary duty case is insufficient to survive summary judgment. Plaintiffs cited two cases wherein Utah courts acknowledged that nominal damages may be awarded on a ***breach of contract*** case.  (Doc. 503 at p. 13.)  However, unlike a breach of contract claim, actual damages are an element for a breach of fiduciary duty claim.  In *Giles v. Mineral Resources Int'l., Inc.*, 2014 UT App 259, ¶¶ 13-14, 338 P.3d 825, the court recognized that Utah law was not clear on whether a breach of fiduciary duty claim could survive absent actual damages and observed that there was a split of authority among other jurisdictions.  The *Giles* court noted that the split may be attributable to the courts' occasional use of the term "nominal damages" broadly to describe situations where plaintiffs experienced actual injury not susceptible to a calculation.  *Id.* at ¶ 14. In any event, Plaintiffs here have come forward with no authority that nominal, as opposed to actual, damages are sufficient to maintain their fiduciary duty claim.

d. Punitive Damages

Finally, absent an award of compensatory damages, Plaintiffs cannot recover punitive damages. Utah Code Ann. § 78B-8-201(1)(a). Whereas Plaintiffs cannot establish compensatory damages, their claim for punitive damages fails.

In summary, whereas Plaintiffs lack expert witness testimony to establish the essential elements of breach and damages, Rule 56(c) mandates summary dismissal of their breach of fiduciary duty claims. *See Celotex*, 477 U.S. at 322.

B. Unjust Enrichment

To establish a claim for unjust enrichment, Plaintiffs must prove "(1) a benefit conferred; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit by the conferee under circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 12, 270 P.3d 464 (cleaned up). Plaintiffs argue that Defendants received a benefit conferred through legal fees paid, receipt and acknowledgement of the same, and Defendants retained the legal fees while strategizing about suing Plaintiffs. (Doc. No. 503 at 15.) Plaintiffs contend that a jury could conclude that it was unjust for Defendants to retain the legal fees paid under the circumstances; therefore, no expert testimony is necessary to proceed on these claims. (*Id*. at 15-16.)

Plaintiffs' argument fails for three reasons. First, Plaintiffs have adduced no evidence that SWP or Hall conferred any benefit upon Defendants. Plaintiffs provided no invoices, receipts, or other documentation reflecting legal fees rendered on behalf of SWP or Hall. Accordingly, SWP

and Hall failed to show any proof as to the first element of an unjust enrichment claim.

Second, a claim for unjust enrichment is an equitable remedy only available when a plaintiff does not have a remedy at law. *See American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) ("if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment."). It is undisputed that Defendants represented EHC and Ceruti in separate and distinct legal matters. As such, EHC's and Ceruti's claims for unjust enrichment are merely a rewording of their claims for breach of contract which they concede is precluded by lack of expert testimony. But-for the exclusion of Plaintiffs' experts, EHC and Ceruti had legal claims for breach of contract they were pursuing against Defendants. Accordingly, they are barred from recovering under the equitable theory of unjust enrichment.

Finally, Plaintiffs' cannot meet their burden to prove that retention of the legal fees paid would be unjust under the circumstances without expert testimony. Plaintiffs argue that the circumstances making it unjust for Defendants to retain the legal fees is the allegation that Defendants billed Plaintiffs while plotting to sue them. As already discussed, Defendants did not sue Plaintiffs and whether any conduct of Defendants constituted a breach of the fiduciary duty requires expert opinion.

The undisputed facts of this case demonstrate that Plaintiffs cannot prove the essential elements of their unjust enrichment claims. Accordingly, Rule 56(c) mandates summary dismissal of the same.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

(1)    Defendants' Motion to Dismiss (Doc. No. 471) is GRANTED.

(2)    Defendants' Motion for Summary Judgment (Doc. No. 493) is GRANTED.

(3)    All of Plaintiffs' claims against Defendants are hereby dismissed with prejudice.

DATED this 2nd day of March, 2020.

BY THE COURT:

_____
Dee Benson
United States District Court